# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Cameco Technologies, LLC<br><br>Debtor. | **BKY Case No. 14-30110**<br>**Small Business Case under Chapter 11** |
| Cameco Technologies, LLC,<br><br>Plaintiff,<br><br>v.<br><br>World Business Lenders, LLC,<br><br>Defendant. | **ADV Case No.**_____<br><br><br>**<u>ADVERSARY COMPLAINT</u>** |

## I. INTRODUCTION

1. Creditor World Business Lenders, LLC foreclosed on property related to the underlying bankruptcy case in violation of the automatic stay. World Business Lenders also violated the discharge injunction set forth in 11 U.S.C. § 524(a)(2) by willfully failing to credit payments received under the reorganization plan, and instead, seeking to siphon payments from the Debtor through its owner. World Business Lenders is in contempt for its blatant disregard of the terms of the Plan and bankruptcy procedure.

2. Prior to Cameco Technologies, LLC's bankruptcy filing, it had entered into a commercial loan agreement with World Business Lenders. As part of that

agreement, Serge Ngouambe, the owner of Cameco, signed a personal guaranty, and granted World Business Lenders a mortgage in his home.

3. Cameco later filed for Chapter 11 bankruptcy. A reorganization plan was confirmed, and an order for discharge was entered.

4. World Business Lenders then sought to circumvent the confirmed plan and bankruptcy proceedings by requiring that Ngouambe sign a forbearance agreement, and if he refused, World Business Lenders would foreclose on his home. Under the forbearance agreement, World Business Lenders would receive additional payments outside of the confirmed plan.

5. Additionally, it is clear that World Business Lenders never had any intention to comply with the plan. Specifically, World Business Lenders refused to credit any of Cameco's Plan payments. Instead, World Business Lenders commenced foreclosure against Ngouambe's home, which was sold by Sheriff's Sale.

6. World Business Lenders never filed a motion for relief from stay prior to foreclosing on Ngouambe's home, nor did it seek permission from the Bankruptcy Court to refuse payments from Cameco.

7. World Business Lenders' willful actions are a violation of the automatic stay, the discharge injunction set forth in 11 U.S.C. § 524(a)(2), constitute contempt of a court order, for which it is liable to Cameco for actual damages, attorney fees, and sanctions.

## II. JURISDICTION

8. This is a core proceeding as that term is defined by 28 U.S.C. §§ 157(b)(2) in that it concerns claims and matters arising out of the administration of this bankruptcy case and rights duly established under Title 11 of the United States Code and other applicable federal law.

9. This Court has jurisdiction under 11 U.S.C. § 362, 11 U.S.C. § 524, and 18 U.S.C. 1334. This adversary proceeding relates to this case under Chapter 11 of the Bankruptcy Code, which is closed.

10. This is an adversary is commenced pursuant to Fed. R. Bankr. P. 7001 *et seq.* and 11 U.S.C. §§ 362 and 524.

11. Venue lies in this District pursuant to 28 U.S.C. § 1391(b).

## III. FACTS

12. On October 8, 2013, Cameco executed a commercial promissory note and security agreement in favor of World Business Lenders ("Promissory Note").

13. In conjunction with the Promissory Note, Serge Ngouambe executed a personal guaranty in favor World Business Lenders ("Personal Guaranty") on October 8, 2013.

14. On October 9, 2013, Cameco executed an amendment of the Promissory Note.

15. On that same day, Ngouambe also granted a mortgage to World Business Lenders in his home (the "Mortgage"), which is located at 4741 Blaine Avenue, Inver Grove Heights, MN 55076, legally described as:

> Unit Number 507, Lafayette Park, CIC 370, Dakota County, Minnesota.

(the "Property," or the "Home").

16. On January 14, 2014, Ngouambe filed a petition for relief under Chapter 11 of the US Bankruptcy Code.

17. At some point after Cameco's bankruptcy filing, World Business Lenders commenced foreclosure proceedings against the Mortgage because Cameco had fallen behind on payments under the Promissory Note. World Business Lenders later scheduled a sheriff's sale for December 2, 2014 on Ngouambe's Home.

18. On July 2, 2014, Ngouambe filed a Chapter 11 Small Business Reorganization plan. *See* Docket No. 51.

19. On July 28, 2014, Ngouambe filed an Amended Chapter 11 Small Business Reorganization Plan. *See* Docket No. 64.

20. On August 25, 2014, Ngouambe filed a Report of Ballot Tabulation, which states that all creditors accepted the Amended Chapter 11 Small Business Reorganization Plan, including World Business Lenders. *See* Docket No. 76.

21. On August 27, 2014, Ngouambe filed a Second Amended Plan of Reorganization (the "Plan"). *See* Docket No. 78.

22. On that same day, the Bankruptcy Court entered an order confirming the Plan. *See* Docket No. 81.

23. The confirmed Plan lists World Business Lenders in Class 3, and the amount Cameco needed to pay World Business Lenders each month was $399.16. Additionally, Cameco was obligated to make 48 payments to World Business Lenders, the first payment being due in January 2015.

24. On November 25, 2014, the Bankruptcy Court entered an Order for Discharge, and closed the bankruptcy case. *See* Docket No. 100.

25. Despite the close relation of Ngouambe's Home to the bankruptcy estate, and the confirmation of the Plan, World Business Lenders continued to threaten to foreclose on Ngouambe's Home.

26. After the bankruptcy case was closed, World Business Lenders gave Ngouambe an ultimatum: he and his wife needed to sign a forbearance agreement, which required a down payment of $3,500.00, and monthly payments of the same until the completion of a refinance. In return, World Business Lenders agreed to stop the foreclosure proceedings on Ngouambe's Home ("Forbearance Agreement").

27. By doing so, World Business Lenders sought to create a side agreement, which was not authorized by the Plan or the Bankruptcy Court in an effort to favor itself over other creditors.

28. World Business Lenders' threat to continue foreclosure proceedings put Ngouambe and his wife in an untenable position. Not only would they lose their home, but Cameco would lose a vital piece of collateral for obtaining future financing. Additionally, as stated in the Plan, Ngouambe was already going to allocate $50,000 of his personal funds to make payments under the Plan on Cameco's behalf. Moreover, Cameco is Ngouambe's only source of income, so World Business Lenders' actions are an attempt to siphon money from Cameco through a guarantor. Consequently, because of the close relationship between

Ngouambe and Cameco, World Business Lenders' collection efforts directly interfered with the administration of bankruptcy estate.

29. On or about December 1, 2014, Ngouambe and his wife executed the Forbearance Agreement in hopes to avoid losing their home and preserve one of Cameco's only sources of financing.

30. Pursuant to the Forbearance Agreement, Ngouambe made two $3,500.00 payments to World Business Lenders.

31. Additionally, on January 2, 2015, Cameco sent its first Plan payment of $399.16 to World Business Lenders.

32. Despite the terms of the Plan, World Business Lenders refused to credit the January 2015 Plan payment.

33. Cameco continued to make the scheduled Plan payments to World Business Lenders in conformance with the Plan through January 2016, but World Business Lenders refused to credit any of Cameco's payments.

34. Clearly, World Business Lenders never intended to comply with the Plan, and instead sought to bypass the bankruptcy proceedings altogether.

35. Making matters worse, the lender who was going to fund the refinance required by the Forbearance Agreement backed out when it learned that World Business Lenders had previously filed a Notice of Pendency of Foreclosure. World Business Lenders actions made it impossible for Cameco and Ngouambe to comply with the agreement.

36. After the refinance fell through, World Business Lenders recommenced foreclosure proceedings on Ngouambe's Home.

37. On September 8, 2015, Ngouambe's Home was sold by sheriff's sale.

38. In a letter dated September 29, 2015, World Business Lenders returned Cameco's check dated September 2, 2015, stating that "WBL did not agree to a modified payment plan on the corresponding loan."

39. At no point after the commencement of Cameco's bankruptcy did World Business Lenders bring a motion for relief from stay or seek any approval from the Bankruptcy Court to foreclose on Ngouambe's Home.

40. Further, World Business Lenders did not bring a motion or seek approval from the Bankruptcy Court to refuse to credit Plan payments received from Cameco.

## IV. LEGAL CLAIMS

### COUNT I
### Violation of the Automatic Stay, 11 U.S.C. § 362.

41. Plaintiff incorporates the above paragraphs by reference.

42. 11 U.S.C. § 362(a)(5) stays any action to any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.

43. 11 U.S.C. § 362(a)(6) stays any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

44. Generally, Section 362 is designed to prevent interference with the bankruptcy court's disposition of property of the estate.

45. A court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. 11 U.S.C. § 105(a)

46. The automatic stay enjoined World Business Lenders' attempts to enforce a pre-petition debt and interfere with the court's disposition of the property of the bankruptcy estate by foreclosing on Ngouambe's Home.

47. The filing of a bankruptcy effectuates an automatic stay of all proceedings against Debtor effective when the petition is filed and actions taken in violation of the stay are void.

48. World Business Lenders willfully violated the automatic stay by commencing foreclosure proceedings and selling Ngouambe's Home without authorization from the Bankruptcy Court. Specifically, Ngouambe and his wife's relation to the Debtor is so close that the automatic stay extended to him as well. First, Ngouambe is the owner of Cameco. Second, the Plan specifically calls for $50,000 of funding from Ngouambe's personal assets. Further, Ngouambe's Home was pledged as collateral for the benefit of Debtor, and remains one of the main sources of financing for the Debtor.

49. Instead of requesting relief from stay, World Business Lenders sought payments outside of the Plan, and subsequently foreclosed on Ngouambe's Home when it

did not get what it wanted. By doing so, World Business Lenders' acted with blatant disregard to court rules and procedure.

50. Because the foreclosure proceedings and the sheriff's sale of the Home were conducted in violation of the automatic stay, the September 8, 2015 sheriff's sale against the Home is void, and should be rescinded by this Court.

51. Additionally, for its willful violation of the automatic stay, World Business Lenders is liable to Cameco for actual damages, including costs and attorney fees.

## COUNT II
## Violation of the Discharge Order, 11 U.S.C. § 524.

52. Plaintiff incorporates the above paragraphs by reference.

53. A discharge operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

54. The willful failure of a creditor to credit payments received under a confirmed plan constitutes a violation of an injunction under 11 U.S.C. § 524(a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor. 11 U.S.C. § 524(i).

55. As a creditor, World Business Lenders was obligated to credit all payments received from Cameco pursuant to the Plan.

56. To date, Cameco made all payments to World Business Lenders as required by the plan. At no point after the Plan was confirmed was Cameco in default under the

Plan. Further, the Plan was never revoked or modified after discharge, and remains in effect as of the date of this Complaint.

57. Despite its obligation to credit payments and adhere to the terms of the Plan, World Business Lenders willfully failed to credit payments received from Cameco. In fact, World Business Lenders never credited any of the payments received from Cameco.

58. Instead, World Business Lenders sought to circumvent the Plan, and subsequently foreclosed on Ngouambe's Home when it did not get what it wanted. By doing so, World Business Lenders' acted with blatant disregard to court rules and procedure.

59. As direct result of World Business Lenders' violation of the discharge injunction set forth by under 11 U.S.C. § 524(a)(2), Cameco has been materially damaged.

60. For its actions, World Business Lenders is liable to Cameco for actual damages, including costs and attorneys' fees.

## COUNT III
## Contempt

61. Plaintiff incorporates the above paragraphs by reference.

62. The provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan. 11 U.S.C. § 1141(a).

63. Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court. 11 U.S.C. § 1142(a).

64. As a creditor, World Business Lenders is bound by the terms of the confirmed Plan. 11 U.S.C. § 1141(a).

65. The confirmed Plan is an order of the Bankruptcy Court.

66. As a creditor, World Business Lenders is required to carry out the Plan and shall comply with any orders of the Bankruptcy Court. 11 U.S.C. § 1142(a).

67. Pursuant to the confirmed Plan, World Business Lenders is obligated to credit payments received from Cameco.

68. Despite the its obligations under the Plan, World Business Lenders willfully failed to credit payments received from Cameco.

69. World Business Lenders' failure to credit payments is violation of the Plan and an order of the Bankruptcy Court.

70. World Business Lenders willfully failed to credit all of the payments received from Cameco, and, therefore, was never in compliance with the Plan.

71. Instead, World Business Lenders sought payments outside of the Plan through the Forbearance Agreement, and subsequently foreclosed on Ngouambe's Home when it did not get what it wanted. By doing so, World Business Lenders' acted with blatant disregard to court rules and procedure.

72. World Business Lenders' complete disregard for the terms of the Plan shows that it had the clear intent never to comply with the Plan, and to instead circumvent the bankruptcy proceedings altogether in order to favor itself over other creditors.

73. Because of the close relationship between Ngouambe and Cameco, World Business Lenders' efforts to collect against Ngouambe's personal assets adversely affects the bankruptcy estate by jeopardizing Cameco's ability to obtain future financing, and/or by jeopardizing Ngouambe's ability to make payments from his personal assets as needed to ensure that Cameco is in compliance with the Plan.

74. By blatantly disregarding the terms of the Plan, World Business Lenders is in clear contempt of the Bankruptcy Court and its orders, and should be fined on daily basis at an appropriate rate, to be determined by the Court, until it credits all of the Plan payments it received from Cameco.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks this Court to award relief as follows:

1. Declaring the September 8, 2015 sheriff's sale conducted on Ngouambe's Home void;

2. Rescinding the September 8, 2015 sheriff's sale conducted on Ngouambe's Home;

3. Enjoining World Business Lenders from future foreclosure actions against Ngouambe's Home during the 48-month Plan payment period;

4. Holding World Business Lenders in contempt for its willful failure to comply with the Plan and the orders of the Bankruptcy Court, and fined on daily basis at an

appropriate rate, to be determined by the Court, until it credits all of the payments it received from Cameco in accordance with the Plan; and

5.  Any such further relief this the Court deems appropriate.

                                    **CHRISTENSEN LAW OFFICE PLLC**

Dated: March 8, 2016          By: /s/ Cole W.R. Langsdorf
                                    Daniel M. Eaton (#389452)
                                    Cole W.R. Langsdorf (#397288)
                                    Attorneys for Plaintiff
                                    800 Washington Ave. N., Ste. 704
                                    Minneapolis MN 55401
                                    Ph: (612) 823-4016
                                    Fax: (612) 823-4777
                                    cole@clawoffice.com